UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MELVIN LANE, SR.,

        Plaintiff,

v.                                Case No. 1:12-cv-388
                                     Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of

a final decision of the Commissioner of the Social Security Administration (Commissioner) denying

his claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

        Plaintiff was born on August 28, 1964 (AR 147).[1]  He alleged a disability onset date

of January 26, 2008 (AR 188).  Plaintiff completed the 12th grade and had previous employment as

a factory worker (feeder/split machine) (AR 154).  He identified his disabling conditions as: bad

knees; diabetes; obesity (5'11" and 320 pounds); headaches; heart conditions; and depression (AR

152).  On August 24, 2010, an Administrative Law Judge (ALJ), reviewed plaintiff's claim *de novo*

and entered a decision denying benefits (AR 9-21).  This decision, which was later approved by the

Appeals Council, has become the final decision of the Commissioner and is now before the Court

for review.

_____

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases."  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007), citing  *Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991).  "The proper inquiry in an application for SSI benefits

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step.  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of January 26, 2008 and met the insured status requirements of the Act through September 30, 2011 (AR 11).  At step two, the ALJ found that plaintiff had the following severe impairments: distal symmetrical sensory neuropathy; disorders of the back (discogenic and degenerative); obstructive sleep apnea; bilateral knee pain; diabetes; obesity; headaches; hypertension; and major depression (AR 11).  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically Listings 1.02 (Major dysfunction of a joint(s) (due to any cause)), 1.04 (Disorders of the spine), 9.08 (Diabetes mellitus) and 12.04 (Affective disorders) (AR 12-15).

The ALJ decided at the fourth step that plaintiff has the residual functional capacity (RFC):

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except occasional climbing, balancing, stooping, kneeling, crouching, and crawling; no exposure to dangerous machinery or unprotected heights; performing simple routine repetitive tasks not performed in a fast paced production environment involving only simple work related decisions and in general with relatively few work place changes; and only occasional interact [sic] with supervisors, coworkers, and the general public.

(AR 15).  The ALJ further found that plaintiff was unable to perform any past relevant work (AR 19).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, sedentary jobs in the national economy (AR 33).  Specifically, plaintiff could perform

the following jobs in the regional economy (Michigan): packer (6,000 jobs); and surveillance systems monitor (3,500 jobs) (AR 20). Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, at any time from January 26, 2008 (the alleged onset date) through August 24, 2010 (the date of the decision) (AR 20-21).

### III. ANALYSIS

Plaintiff has raised three issues on appeal.

### A. The ALJ gave no valid reasons for rejecting plaintiff's reported symptoms and limitations

### 1. Legal standard

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility

determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

### 2.      The ALJ's evaluation of plaintiff's credibility

The ALJ evaluated plaintiff's credibility as follows:

The claimant alleges being totally disabled since January 26, 2008. He testified that he is totally disabled because he has problems with pain in his bilateral knees, right greater than left, and lower back pain. The claimant indicated that he takes Vicodin and Norco for his symptoms of pain but they do not work. He also indicated that he has some depression with symptoms of anger, suicidal thoughts, isolating, problems with focusing and concentrating, and feelings of guilt and worthlessness. In his activities of daily living, the claimant testified that twice a week he spends half the day in his room because he does not like to be around others. He indicated that twice a day he has to lie down for 20 minutes to get relief of his symptoms of pain. The claimant stated that he has side-effects from his medications to include diarrhea and sleepiness.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Despite the claimant's allegations that he has been totally disabled at any time relevant to this decision, there is no objective medical evidence of record to support them. While the claimant may have some symptoms of pain and functional limitations as a result, there are no objective signs or physical findings showing and significant limitations that would prevent him from engaging in sedentary level work with some additional restrictions. Even though the claimant may have some depression, the objective evidence demonstrates that he only recently began treatment and, it appears that he has had some improvement as a result. While the claimant alleges that he has to lie down twice a day for 20 minutes each time secondary to pain and that twice a week he spends half a day in his room secondary to not wanting to be around others, there is no objective medical evidence of record to include objective signs or physical findings that demonstrate an impairment that results in him having to do that.

Even though the claimant alleges being totally disabled, he engages in activities of daily living which are consistent with a sedentary level of work activity. The claimant is able to dress and groom himself; he prepares frozen dinners and makes sandwiches, he iron [sic] clothes, drives an automobile, goes to the store to

pick up his medicines, is able to pay bills and count change, watches television, reads the paper, talks on the phone, and regularly attends church (Exhibit B5E). While there is evidence that the claimant has been using a cane, there is no objective medical evidence of record to include objective signs and physical findings that demonstrates he requires the use of any assistive device or that he has been prescribed an assistive device. Even though the claimant may have been prescribed crutches after his right knee endoscopic surgical procedure in the remote past for his recovery, there is no objective medical evidence of record that he continues to have the need for any assistive device. Furthermore, while the claimant alleges having some side-effects to medications, the undersigned recognizes that the claimant's medications can be adjusted and or changed to minimize or eliminate adverse side effects. Moreover, the claimant testified that his doctor told him that he will adjust to his medications once they are fully within his system as he testified to have a recent adjustment to his medications.

While no doubt the claimant experiences some pain, factors for consideration in evaluating an individual's subjective complaints of pain include whether there is documentation of persistent significant limitations of range of motion, muscle spasm, muscular atrophy from lack of use, significant neurological deficits, weight loss or impairment of general nutrition, and non-alleviation of symptoms by medication. *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th cir. 1988), *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987), *Hames v. Heckler*, 707 F.2d 162, 166 (5th cir. 1983). None of the claimant's examinations disclosed the above findings to any significant degree. Accordingly, the undersigned concludes that the claimant's subjective allegations are not wholly credible and only partially supported by the overall objective medical evidence of record.

(AR 15-17).

### 3. Plaintiff's claims regarding credibility

Plaintiff contends that the ALJ's credibility determination is flawed for five reasons:

(1) "[t]he ALJ rejected [plaintiff's] alleged total disability, need to lie down and withdrawal from social contact because unsupported by objective medical evidence (objective signs or physical findings);" (2) the ALJ "rejected limitations due to depression because psychological treatment only recently began, and has resulted in 'some improvement;'" (3) the ALJ "rejected allegations of total disability because ADLs showed a sedentary level of activity;" (4) the ALJ "rejected [plaintiff's] use of a cane because not prescribed and objective signs and physical findings did not support the

need for same;" and, (5) the ALJ "rejected pain complaints because not corroborated by limited range of motion, muscle spasm, atrophy, weight loss, neurological deficits and nonalleviation by medication." Plaintiff's Brief at pp. 5-6.

### a.    Need to lie down, withdrawal from social contact, and use of cane

Plaintiff does not set forth any particular medical evidence to support his claim that the ALJ's credibility determination is flawed with respect to his need to lie down, his withdrawal from social contact, and his use of a cane.  Rather, plaintiff's argument contesting the ALJ's credibility determination consists of generalized statements that the ALJ imposed "unauthorized corroboration requirements" and that the ALJ's  "failure to cite any inconsistency precludes rejection of Claimant's testimony."  Plaintiff's Brief at p. 7-8.  Contrary to plaintiff's claim, his statements regarding alleged disabling impairments are insufficient, in and of themselves, to establish a disability.  "An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of  disability."  *Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 529 (6th Cir. 1992), quoting 42 U.S.C. § 423(d)(5)(A).  "A claimant, however, may rely in part on her own testimony *in combination with* objective medical evidence in order to establish that she is disabled."  *Id.* (emphasis in original).  *See Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-35 (6th Cir.1987) (objective medical evidence that confirms the existence of pain is required).  Accordingly, plaintiff's claim that the ALJ imposed an unauthorized corroboration requirements should be denied.

### b.    Psychological treatment

Plaintiff contends that the ALJ engaged in "improper doctor playing" with respect to plaintiff's limited psychological treatment with Dr. Scherpenisse.  Specifically, the ALJ stated

that "[e]ven though the claimant may have some depression, the objective evidence demonstrates that he only recently began treatment and, it appears that he has had some improvement as a result" (AR 16). The record reflects that plaintiff first met with Dr. Scherpenisse on December 15, 2009 (AR 387), approximately six months prior to the administrative hearing held on May 18, 2010 (AR 26). The ALJ's reference to the fact that plaintiff only recently sought treatment for his mental impairment is not persuasive. *See Blankenship v. Bowen*, 874 F.2d 1116, 1124 (1989) ("it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation"). However, the Court does not consider this comment, in and of itself, as a compelling reason to reverse the ALJ's credibility determination. *See Smith*, 307 F.3d at 379.[2]

### c.    ADLs

Plaintiff contests the ALJ's determination that he could perform sedentary work. As discussed, the ALJ found that plaintiff engaged in ADLs which were consistent with a sedentary level of work activity, i.e., "[t]he claimant is able to dress and groom himself; he prepares frozen dinners and makes sandwiches, he iron [sic] clothes, drives an automobile, goes to the store to pick up his medicines, is able to pay bills and count change, watches television, reads the paper, talks on the phone, and regularly attends church" (AR 17). The physical exertion requirements to perform "sedentary work" are defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

---

[2] The Court will address plaintiff's claim that the ALJ's improperly found that his mental condition improved with treatment in its discussion of Dr. Sherpenisse's opinions. *See* § III.B.4., *infra*.

20 C.F.R. §§ 404.1567(a) and 5416.967(a).

While plaintiff may not have engaged vigorously in all of these activities, such endeavors are not indicative of an invalid, incapable of performing sedentary types of work. *See, e.g., Pasco v. Commissioner of Social Security*, 137 Fed. Appx. 828, 846 (6th Cir. 2005) (substantial evidence supported finding that plaintiff was not disabled where plaintiff could "engage in daily activities such as housekeeping, doing laundry, and maintaining a neat, attractive appearance" and could "engage in reading and playing cards on a regular basis, both of which require some concentration") (footnote omitted); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability); *Gist v. Secretary of Health and Human Services*, 736 F.2d 352, 358 (6th Cir. 1984) (a claimant's capacity to perform daily activities on a regular basis will militate against a finding of disability). Accordingly, the ALJ could properly discount plaintiff's credibility based upon his ADLs.

### d. Plaintiff's treatment for his pain

Plaintiff contends that the ALJ did not properly evaluate his credibility with respect to pain because the ALJ falsely cited the "nonalleviation of symptoms by medication" and that "[n]one of claimant's examinations disclose the above findings to any significant degree." Plaintiff's Brief at p. 10. Specifically, plaintiff contends that he received an injection from Dr. Wilson on January 29, 2009 which did not alleviate his symptoms (AR 318). Plaintiff's Brief at pp. 10-11.

Plaintiff has taken the ALJ's statement out of context. The ALJ's entire statement is as follows:

While no doubt the claimant experiences some pain, factors for consideration in evaluating an individual's subjective complaints of pain include whether there is documentation of persistent significant limitations of range of motion, muscle spasm, muscular atrophy from lack of use, significant neurological deficits, weight loss or impairment of general nutrition, and non-alleviation of symptoms by medication. *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th cir. 1988), *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987), *Hames v. Heckler*, 707 F.2d 162, 166 (5th cir. 1983). None of the claimant's examinations disclosed the above findings to any significant degree. Accordingly, the undersigned concludes that the claimant's subjective allegations are not wholly credible and only partially supported by the overall objective medical evidence of record.

(AR 17).

Plaintiff has pointed out one instance in which he received a treatment that allegedly did not resolve his pain. This single instance involving the "non-alleviation of symptoms by medication" is not sufficient to reverse the ALJ's credibility determination, which was based upon the absence of a number of other factors (e.g., significant limitations of range of motion, muscle spasm, muscular atrophy from lack of use, significant neurological deficits, and weight loss) which would support a claim of disabling pain. This claim of error should be denied.

**B.      The ALJ violated the treating physician rule**

Plaintiff contends that the ALJ did not give controlling weight to the opinions of his treating physicians, Jeffrey D. Recknagel, M.D., Anthony Wilson, M.D., Erin Marti, M.D. and Melvin Sherpenisse, Ph.D. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical

condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). Under the regulations, "[t]reating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013), quoting 20 C.F.R. § 404.1527(c)(2).

An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen*, 964 F.2d at 528. In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip*, 25 F.3d at 287. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

1.      **Dr. Recknagel**

Plaintiff relies on a "Medical assessment of ability to do work-related activities (Physical)" form completed by Dr. Recknagel on November 28, 2007, which indicated that plaintiff could perform a limited range of activities (AR 420-23). The ALJ addressed Dr. Recknagel's opinion as follows:

> The undersigned gives very little weight to the opinion of Dr. Recknagel wherein he opined on November 28,2007, that the claimant's impairments restrict him such that he can sit no more than 3 hours, stand no more than 1 hour, and walk no more than 1 hour, with a sit or stand option every 2 hours. He further opined that the claimant could only occasional lift and or carry up to 10 pounds with some additional restrictions (Exhibit B-20F).
>
> The undersigned gives very little weight to this opinion, specifically with respect to the limitations placed on the claimant's sitting, standing, and walking. There are no objective signs or physical findings to support such limitations and Dr. Recknagel did not provide any documentation to support his opinion. On November 17, 2007, Dr. Recknagel made a sworn statement wherein he opined that the claimant was totally disabled at least through November 5, 2007 and, that the claimant's disability status has not changed as of the date of his statement (Exhibit B-21F). Even though the opinion of Dr. Recknagel was made prior to the claimant's alleged onset date of disability [i.e., January 6, 2008], the undersigned has considered his opinion and gives very little weight to that opinion as there is no objective medical evidence of record to include objective signs or physical findings demonstrating that the claimant has been disabled at any time relevant to this decision.

(AR 18).

Plaintiff contends that Dr. Recknagel's records supported these limitations:

[I]n the case at bar there is documentation to support Dr. Recknagel's opinions. Knee x-rays showed osteophytes in Claimant's knee (225) while physical examination disclosed knee effusion (225, 318), thus supporting Dr. Recknagel's diagnosis of knee arthritis (25) [225] and thus supporting his Opinions that Claimant cannot be on his feet more than two out of eight (420), should never squat (421), and should climb stairs only occasionally (421). Lumbar radiographs showed degeneration at L5-S1, particularly of the facet joints (224, 226), thus supporting Dr. Recknagel's opinions that Claimant can sit no more than five hours out of eight (420) and should only occasionally bend or twist (421).

Plaintiff's Brief at p. 12.

While plaintiff has provided examples of evidence which he states could support Dr. Recknagel's restrictive limitations, Dr. Recknagel did not rely on this evidence. As the ALJ pointed out, "Dr. Recknagel did not provide any documentation in support of his opinion" (AR 18). In this regard, courts have increasingly questioned the evidentiary value of "multiple choice" opinion forms (like the one completed by Dr. Recknagel) which are not supported by clinical records. As one court observed:

> It does not appear that the Sixth Circuit has directly addressed the weight afforded to check-box forms filled out by treating physicians, however, other circuit courts and courts within the Sixth Circuit have cast doubt on the usefulness of such "checkmark" or "multiple choice" forms when unaccompanied by explanation or unsupported by physician's notes. *See Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir.2010) ("Although by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records."); *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir.2004) (upholding the ALJ's discounting of a treating physician's opinion in check-list form because "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole. . . or by objective medical findings"); *Mason v. Shalala*, 994 F.2d 1058, 1065–66 (3d Cir.1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best . . . where these so-called reports are unaccompanied by thorough written reports, their reliability is suspect.") (internal quotations and citation omitted); *Boley v. Astrue*, No. 11–10896, 2012 WL 680393, at *18 (E.D.Mich. Feb.10, 2012) ("Dr. Ulano merely checked off boxes on the form to indicate that [claimant] satisfied the requirements for listing § 12.05 'personality disorder' and almost satisfied the listing for § 12.04 'affective disorder'. . . [but] did not support any of these findings with any evidence in her treating record or any new observations from more recent treatments."); *Ahee v. Comm'r of Soc. Sec.*, No. 07–CV–12071, 2008 WL 4377652, at *4 (E.D.Mich. Sept.22, 2008) ("The ALJ has discretion to reject a medical opinion, here a form, when the opinion is not supported by objective medical evidence.").

*Doyle v. Commissioner of Social Security*, No. 2:11-cv-371, 2012 WL 4829434 at *9 (Report and Recommendation) (Sept. 12, 2012), adopted (Oct. 10, 2012 E.D. Tenn.).

Absent Dr. Recknagel providing some explanation for the various restrictions which appear in the multiple choice opinion form, there is no basis for the ALJ (or any subsequent reviewer) to determine the medical bases for those restrictions. It is plaintiff's burden to prove that he suffers from a disabling condition. The ALJ could properly discount Dr. Recknagel's November 28, 2007 opinion because it was weak evidence which did not cite supporting objective medical evidence.

### 2. Dr. Wilson

Plaintiff contends that the ALJ failed to properly evaluate Dr. Wilson's opinions (AR 317-19, 327-29). Plaintiff points out that records which reflect that Dr. Wilson treated him a few times in 2008 (AR 317-19). With respect to the opinion evidence, plaintiff cites three documents, which appear to be work restrictions from January 29th, March 5th and June 11th, 2009 (AR 327-29). These documents refer to plaintiff, but contain no information other than the comment "totally disabled" and/or a check-mark in a box entitled "unable to work" (AR 327-29). The ALJ did not address these opinions attributed to Dr. Wilson.[3] As an initial matter, the Court does not consider these to be valid opinions. While Dr. Wilson's name is typed on the opinion forms, none of the forms bear his signature. Even if Dr. Wilson had signed the opinion forms, the ALJ would not be bound by the doctor's opinion that plaintiff was unable to work. *See* 20 C.F.R. § 404.1527(d)(1) ("[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled' ). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Services*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability

---

[3] Plaintiff's claim with respect to Dr. Wilson is rather ambiguous, stating that "the ALJ did not claim that Dr. Wilson's opinions were not sufficiently supported." Plaintiff's Brief at p. 13, n. 7.

is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th Cir. 1984). Accordingly, this error is without merit.

### 3. Dr. Marti

In a sworn statement given on January 18, 2010, Dr. Marti testified: that she had treated plaintiff since March 2009; that plaintiff's obesity limits his ability to function; and that he has significant periods of apathy and depression (AR 371-72). The doctor testified that she encouraged plaintiff to exercise and use an 1800 calorie per day diet to control his obesity and diabetes (AR 373). The doctor also opined that it "would probably be difficult, at least at this time" for plaintiff to work 40 hours per week due to his obesity and depression (AR 374). The ALJ addressed Dr. Marti's opinion as follows:

> The undersigned has also considered the sworn statement of Erin Marti, M.D., completed on January 18, 2010, wherein Dr. Marti opined that it would be difficult for the claimant to maintain sustained employment, primarily due to his obesity and depression (Exhibit B-13F). The undersigned gives very little weight to this opinion as it is inconsistent with the overall objective medical evidence of record and there is no objective medical evidence of record that the claimant's depression along with his physical problems prevent him from engaging in all work activity. In fact, Dr. Marti indicated in his [sic] statement that the claimant's depression is improving and that the claimant has been encouraged to exercise and follow a strict diet (Exhibit B-13F).

(AR 18).

Plaintiff contends that the ALJ's opinion was invalid because "a) it imposes an 'objective evidence' requirement not authorized by the regulations and b) rejecting a treator's disability opinion because there is no evidence of disability improperly assumes the very point to be decided." Plaintiff's Brief at p. 17. The Court notes that while Dr. Marti testified that she has treated plaintiff since March 2009 (AR 371), the record includes treatment provided by Dr. Marti

after she gave her sworn statement, i.e., the record reflects that plaintiff saw Dr. Marti in November 2010 (AR 473-74), December 2010 (AR 475-76) and January 2011 (AR 451-55). *See* Plaintiff's Brief at pp. 3-4. Given the sparse record of Dr. Marti's treatment of plaintiff, the lack of her treatment notes prior to the date of her testimony, and the other evidence in the record, it was not unreasonable for the ALJ to discount the doctor's opinions.

### 4. Dr. Sherpenisse

Plaintiff contends that the ALJ failed to credit Dr. Sherpenisse's opinions with respect to his mental impairment. The ALJ summarized the doctor's opinions as follows:

> On May 3,2010, Melvin Sherpenisse, Ph.D., made a sworn statement indicating that the claimant has marked degrees of severity in maintaining social functioning, in restriction of activities of daily living, and that he has had several episodes of decompensation. Dr. Sherpenisse further opined that he does not believe that the claimant can engage in gainful sustained employment working 8 hours a day on a 40-hour per week basis, secondary to his energy level, keeping focused, concentration, and that the extra stress in work would make him more depressed (Exhibit B-22F). The undersigned gives very little weight to this opinion as it is inconsistent with the overall objective evidence of record and Dr. Sherpenisse did not provide any documentation to support his opinion. In a function report completed by the claimant on July 1, 2008, he reported being capable of engaging in mental functions (Exhibit B-5E) consistent with unskilled work activity, which are not at a disabling level. Furthermore, even though Dr. Sherpenisse indicated that the claimant has had several episodes of decompensation, there is no objective medical evidence of record that the claimant has experienced any episodes of decompensation or that they have been of extended duration as defined in the Social Security Regulations.

(AR 18). The ALJ also stated that "it appears that [plaintiff] has had some improvement as a result" of his treatment with Dr. Sherpenisse (AR 16).

In addition to the matters referred to by the ALJ, the record reflects that Dr. Sherpenisse relied on a GAF score of 45 to suggest that plaintiff's condition was "probably" work

preclusive,[4] and pointed out that if plaintiff got a job that "would be a very good thing," because "the major source of his depression is not having a job" (AR 442).

The ALJ found that plaintiff suffered from a severe impairment of major depression (AR 11) and that as a result of this condition, his RFC was limited to "performing simple routine repetitive tasks not performed in a fast paced production environment involving only simple work related decisions and in general with relatively few work place changes; and only occasional interact [sic] with supervisors, coworkers, and the general public" (AR 15). This RFC was based, in part, upon the ALJ's determination that plaintiff's psychological condition had improved with treatment. The record, however, does not support this determination. On December 15, 2009, Dr. Scherpenisse initially assessed plaintiff as suffering from a major depressive disorder (AR 386-91). On December 22, 2009, January 5, 2010, January 12, 2010 and January 19, 2010, the doctor found that plaintiff suffered from depression (AR 382-85). The doctor's note from January 26, 2010 assessed plaintiff as "very depressed, suicidal" (AR 381). Then, on February 2, 2010, the doctor assessed plaintiff with depression (AR 380).

The ALJ does not explain how plaintiff's condition improved, when his mental assessment from December 2009 through February 2010 was characterized as either "depression"

---

[4] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id*. at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.* This GAF score lies in the 41 to 50 range, which indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

or "very depressed, suicidal."  While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning."  *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).  "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985), *quoting Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984).  Accordingly, the ALJ's decision should be reversed and remanded pursuant to 42 U.S.C. § 405(g).  On remand, the Commissioner should re-evaluate Dr. Scherpenisse's opinion regarding the restrictions arising from plaintiff's depression and articulate how plaintiff's condition improved.

### C.    The ALJ mishandled the credibility of other witnesses

### 1.    Dr. Montes

Stephen A. Montes, D.O., examined plaintiff once on March 23, 2010 (AR 408-15). The ALJ addressed Dr. Montes' opinion as follows:

> The undersigned has also considered the opinion of Stephen A. Montes, D.O., wherein he opines that the claimant is incapable of any gainful employment, not even sedentary type of employment on an 8-hour day, 5 days a week, 50 weeks a year basis (Exhibit B-17F).  The undersigned rejects this opinion as it is inconsistent with the overall objective medical evidence of record and, while there is documentation of an examination accompanying Dr. Montes' opinion, such examination does not demonstrate objective signs or physical findings consistent with a disabled individual.

(AR 19).

Plaintiff contends that the ALJ is required to give good reasons for rejecting Dr. Montes' opinion.  Plaintiff's contention is without merit.  Non-treating physicians are not granted

the presumption of controlling weight afforded to treating physicians under 20 C.F.R. § 404.1527(c). *See Coldiron v. Commissioner of Social Security*, 391 Fed. Appx. 435, 442 (6th Cir.2010), citing *Atterberry v. Secretary of Health & Human Services*, 871 F.2d 567, 572 (6th Cir.1989). In addition, while the ALJ's decision is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson*, 378 F.3d at 545, this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007). Accordingly, plaintiff's claim of error should be denied.

## 2. Licensed Social Worker (LSW) Cathy Schultz

Plaintiff contends that the ALJ failed to address the LSW Schultz's opinion, which plaintiff presented to support a claim that he was disabled under Listing 12.04 (affective disorders). In a sworn statement from June 30, 2011, LSW Schultz testified that in her opinion, plaintiff met the requirements of that listing, which provides as follows:

> 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

20 CFR Pt. 404, Subpt. P, App. 1.

LSW Schultz testified that plaintiff met the "A" and "B" criteria of the listing (AR 494, 499). There is no dispute that plaintiff met the "A" criteria of Listing 12.04 (AR 14). To meet the "B" criteria, a claimant must meet two of the following requirements: marked restriction of activities of daily living; or marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of

decompensation, each of extended duration. Listing 12.04B. With respect to the "B" criteria, LSW Schultz testified that plaintiff had "marked restrictions" in his ADLs, "a lot of difficulty" with maintaining any social functioning, and "great difficulty" with maintaining concentration (AR 499-500). LSW Schultz further testified that it was "impossible" for plaintiff to work a 40-hour per week job (AR 500). The ALJ found that plaintiff did not meet the "B" criteria (AR 14-15). In reaching this determination, the ALJ found that plaintiff had a mild restriction in his ADLs, moderate difficulties in social functioning, some difficulties in interacting with others, and no episodes of decompensation (AR 14-15).

A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d); 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the

claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

Plaintiff's claim that the ALJ did not the address opinions issued by LSW Schultz is harmless error. As an initial matter, LSW Schultz's testimony did not establish that plaintiff met the "B" criteria of Listing 12.04. While Schultz testified that plaintiff had "marked restrictions" in his ADLs, she did not testify that plaintiff had "marked difficulties" with respect to social functioning or maintaining concentration. More importantly, even if Schultz had testified that plaintiff met the "B" criteria, her opinion cannot serve as the basis for determining that plaintiff met the requirements of Listing 12.04, because she is not an acceptable medical source under the regulations. *See* 20 C.F.R. §§ 404.913(a) and 416.1513(a) ("[w]e need evidence from acceptable medical sources to establish whether you have a medically determinable impairment[]"; such sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists). *See, e.g. Perry ex rel. G.D. v. Commissioner of Social Security*, 501 Fed. Appx. 425, 427 (6th Cir. 2012) (the opinion of a special education teacher cannot establish the elements of a listed impairment because such an individual is not an acceptable medical source under 20 C.F.R. § 416.913(a)); *Perschka v. Commissioner of Social Security*, 411 Fed. Appx. 781, 787 (6th Cir. 2010) (physical therapist could not provide evidence to establish a listed impairment because a therapist is not an acceptable medical source under 20 C.F.R. § 404.1513(a)(1)-(5)). Accordingly, plaintiff's claim of error should be denied.

## IV.     Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for re-

evaluation of Dr. Scherpenisse's opinion regarding the restrictions arising from plaintiff's depression. On remand, the Commissioner should articulate how plaintiff's condition improved and what restrictions remain.


Dated:  September 4, 2013                              /s/ Hugh W. Brenneman, Jr.
                                                      HUGH W. BRENNEMAN, JR.
                                                      United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).